ARTHUR P. SNOW & another[1] vs. E. L. DAUPHINAIS, INC.
(and a companion case[2]).

Suffolk. November 9, 1981. — March 19, 1982.

Present: GREANEY, ROSE, & PERRETTA, JJ.

*Adverse Possession and Prescription. Land Court*, Registration proceeding. *Tenants in Common. Practice, Civil*, Commencement of action. *Notice*.

On cross appeals from a decision of the Land Court, briefed and argued prior to the effective date of the amendment of the Massachusetts Rules of Civil Procedure to extend their coverage to proceedings in the Land Court, challenges to the judge's factual findings would not prevail if the findings were warranted on any view of the evidence and all reasonable inferences therefrom. [332-333]

In the circumstances, there was no merit to the defendant's argument that a Land Court judge should have acted, sua sponte, to dismiss the plaintiffs' action because of misstatements and omissions of material facts in and from their petition. [333]

A defendant's claim that the plaintiffs' action for registration and confirmation of title to certain land should be dismissed because of the absence of a necessary party, an owner of a one-sixth interest in the land, was without merit where the statutory requirements of G. L. c. 185, §§ 38 and 39, for notice, publication, and service were satisfied and where the evidence warranted the Land Court judge's findings that nothing in the case indicated where the absent person resided and that the defendant's claim to portions of the land by adverse possession was not through or dependent upon the absent person who had been ousted by her cotenants. [333-334]

In an action to establish title to portions of certain land claimed by adverse possession and under color of title upon which the defendant had encroached in ten locations, the judge's conclusion as to the insufficiency of the evidence on the element of the duration of the defendant's use of seven site locations was warranted [335]; with respect to two locations, the judge erred in finding that the continuity

---

[1] Joseph W. Snow, Arthur's brother and tenant in common.

[2] The companion case is between the same parties.

of the defendant's use of the land was uninterrupted since commenced in 1956, where such use was interrupted by the plaintiffs' filing a petition to register and to confirm their title to the land on March 5, 1975, and thereafter doing nothing which could be construed as a contradiction of that assertion [335-337]; and with respect to the final location, evidence warranted the judge's finding that the defendant had established its claim of adverse possession to a sand-gravel pile area and a prescriptive right of use of a driveway located on the site [337-338].

A claim by the defendant that the plaintiffs' appeal from a Land Court judge's decision on the plaintiffs' petition to register their title to a certain parcel of land was premature was without merit where such appeal was authorized by the provisions of the first paragraph of G. L. c. 185, § 15, as appearing in St. 1973, c. 1114, § 25. [338-339]

PETITION filed in the Land Court on March 5, 1975.

CIVIL ACTION commenced in the Superior Court on February 10, 1978.

The cases were consolidated for trial in the Land Court and were heard by *Randall, J.*

*Leon M. Fox* for Arthur P. Snow & another.

*Jonathan H. Seder* (*Saul A. Seder* with him) for E. L. Dauphinais, Inc.

PERRETTA, J. The Snows (Arthur and Joseph) petitioned the Land Court to register and to confirm their title to a certain parcel of land situated in Grafton. E. L. Dauphinais, Inc. (Dauphinais), filed a complaint in the Superior Court to establish its title to portions of the same land which it claimed by adverse possession and under color of title. The complaint was transferred to the Land Court, and the cases were combined for trial. G. L. c. 212, § 26A. The judge found that Dauphinais had encroached upon the Snows' land in ten locations, only three of which it could rightfully claim by adverse possession. We conclude that Dauphinais established its right to title for only one of those locations, and we reverse the decision.

Arthur and Joseph derived title to the disputed land in the following manner. By a duly recorded deed dated June 11, 1894, one Ashley Rice conveyed the land to Arthur and Joseph's father, George, who died intestate in 1937. He

was survived by his wife, Clara, and their three children, Arthur, Joseph and Cecile, as well as by a daughter of a prior marriage, Estelle M. Rivard. Cecile and Clara died intestate in 1942 and 1949 respectively. At the time of these proceedings Estelle was of parts unknown.

Dauphinais's interest in the land dates back to 1933, when George Snow and Alfred J. Dauphinais entered into an agreement whereby George allowed Alfred to excavate sand and gravel from a twenty-six acre parcel of his land. After Alfred's death, the excavation operations were carried on by his sons, one of whom is Emile, a principal officer in the respondent corporation. In order to truck the sand and gravel out to open road, Emile, in 1933, built a right of way leading from the pit site, over the Snows' land to the south, and out to Worcester Street. The twenty-six acre parcel was conveyed to Emile in 1936 by a duly recorded deed from George. The land to which Arthur and Joseph seek to register title bounds the Dauphinais's twenty-six acre parcel on its easterly and southerly sides. Dauphinais claims ownership of ten sites on the land, four located on the easterly side and six on the southerly.[3]

The judge concluded that Dauphinais had established ownership by adverse possession of three of the ten locations, and these cross appeals ensued.

1. *Standard of Review.*

Both Dauphinais and the Snows attack the judge's factual findings adverse to them. Dauphinais alleges that as matter of law the evidence does not warrant the findings; the Snows state that the findings are clearly erroneous.

Subsequent to the briefing and argument of these cross appeals, the Massachusetts Rules of Civil Procedure were amended, 385 Mass. 1213 (1982), to extend their coverage to proceedings in the Land Court, effective January 1, 1982. The amended rules however, are not applicable to these appeals. See *Seibolt* v. *County of Middlesex*, 366 Mass. 411,

---

[3] Because the various locations are so scattered, it would not be helpful to attempt to reproduce a sketch of the disputed sites.

412 & n.2 (1974). Cf. Mass.R.Civ.P. 1A, subparagraphs 7 & 8, 365 Mass. 732 (1974). Thus, as to this case, challenges to the judge's factual findings will not prevail if the findings are "warranted on any view of the evidence and all reasonable inferences therefrom. *Lyon* v. *Parkinson*, 330 Mass. 374, 375 (1953). *Otis Power Co.* v. *Wolin*, 340 Mass. 391, 395-396 (1960). See G. L. c. 185, § 15. This is an even narrower standard of review than the 'clearly erroneous' test of Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974)." *Norton* v. *West*, 8 Mass. App. Ct. 348, 350 (1979).

2. *Fraud by the Snows.*

In reliance on *State St. Bank & Trust Co.* v. *Beale*, 353 Mass. 103 (1967), and *Kozdras* v. *Land/Vest Properties, Inc.*, 382 Mass. 34 (1980), Dauphinais argues that the judge should have acted, sua sponte, to dismiss the Snows' action because of misstatements and omissions of material facts in and from their petition. Specifically, Dauphinais points to the Snows' failure to disclose Estelle Rivard's one-sixth interest in the land and to acknowledge Dauphinais's right of way and use of the land.

The argument is without substance. The alleged misstatements and omissions of fact neither lulled Dauphinais into inaction nor, in view of the consolidated action, caused the judge to act without full knowledge of the true state of affairs. Contrast *State St. Bank & Trust Co.* v. *Beale*, 353 Mass. at 104; *Kozdras* v. *Land/Vest Properties, Inc.*, 382 Mass. at 38-39. Everyone was extended a full opportunity to be heard on all the issues raised by the respective claims. See *Lyon* v. *Parkinson*, 330 Mass. at 375-376.

3. *Absence of a Necessary Party.*

Dauphinais also claims that the Snows' action should be dismissed because of the absence of Estelle Rivard, whose one-sixth interest was discovered by the Land Court examiner and listed in his opinion filed pursuant to G. L. c. 185, § 37, as in effect prior to St. 1977, c. 151, § 1.

The judge found that Estelle, who had married but remained childless, left Worcester in 1931, "never to return or to make contact with her family." She is listed in the pro-

bate of George Snow's estate "as an heir at law of unknown residence," and the title examiner listed her residence as "unknown." The judge specifically found, and he was warranted in so doing, that "[n]othing in the case indicates where Estelle Rivard resided."

Dauphinais argues that the proceedings are tainted by the fact that no diligent search was ever made for Estelle. Dauphinais would include within the meaning of a diligent search resort to State and local census reports, Social Security assistance and military service records, missing persons services, and vital statistics bureaus.[4] In short, Dauphinais's claim proceeds on conjecture, and we need not consider it. The statutory requirements for notice, publication, and service were satisfied. See G. L. c. 185, §§ 38 (as in effect prior to St. 1977, c. 151, § 2) & 39. Cf. G. L. c. 223, § 33, repealed by St. 1973, c. 1114, § 91; Mass.R.Civ.P. 4(d)(1), 365 Mass. 734 (1974), and 4(i), as appearing in 385 Mass. 1213 (1982).

Moreover, the judge found that Dauphinais's claim was not through or dependent upon Estelle, whose interest had been adversely possessed by her cotenants, Clara, Arthur, and Joseph Snow. Commencing in 1937, Arthur and Joseph, with Clara until her death, used the land and apportioned the profits derived therefrom among themselves. Clara and Joseph, and Joseph after Clara's death, lived on the land and paid the real estate taxes yearly. The judge properly concluded on the evidence that Estelle had been ousted by her cotenants. *Nickerson* v. *Nickerson*, 235 Mass. 348, 352 (1920), and authorities therein cited. Burby, Real Property § 100 (3d ed. 1965).

---

[4] The title examiner stated in his report: "All Grantor and Grantee indices of the Worcester District Registry of Deeds, all Owner's Indices of the Worcester Registry District of the Land Court, all Worcester County Probate records and all death records in the Towns of Grafton and Somerset and at the Office of Vital Statistics, Secretary of State of the Commonwealth of Massachusetts have been diligently searched by your Examiner without discovering further evidence as to whether Estelle M. Rivard is alive or not or where she may be found."

4. *Dauphinais's Use of the Land.*

The parties identified by number ten sites on a plan of the land used by Dauphinais and in dispute. This plan is appended to the judge's decision in which he makes reference to each location as numbered.[5]

While Dauphinais made a claim to title by deed, it offered no deed or other writing in the nature of a conveyance signed by the Snows granting any land in addition to that which had been conveyed to Emile in 1936. The judge correctly determined that Dauphinais's claim to the land was by adverse possession which "can be acquired only by proof of nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years." *Ryan* v. *Stavros*, 348 Mass. 251, 262 (1964).

a. *Locations 1, 2, 3, 4, 7, 9, and 10.* In addition to the evidence presented by the parties, the judge took a view. While he found definite evidence of use by Dauphinais at these sites,[6] there was no clear indication of the duration of any use. Although at location 10, it was "apparent" that signs, other than the three year old sign then at the site, had been located in the area, there was nothing to show when that use began. From the remains of a shack on location 9, the judge found that "it is obvious that it has not been used for a long time." Within the limited scope of our review, we have found nothing in the admitted pleadings, exhibits, and testimony, including those portions of each that Dauphinais specifically urged us to consider, which would persuade us that the judge's conclusion as to the insufficiency of the evidence on the element of the duration of the use was unwarranted.

b. *Locations 5 and 6.* Here the judge found evidence of open, notorious, and hostile use by Dauphinais, commencing in 1956. The Snows filed their petition on March 5,

---

[5] The plan appended to the judge's decision is a copy of the pertinent part of the plan filed with the Snows' petition pursuant to G. L. c. 185, § 33.

[6] A silt pile, small areas of paving, a shack, and a large illuminated sign.

1975, some nineteen years later. A citation was issued on September 23, 1977, Dauphinais received notice of the petition by registered mail on October 14, 1977, and special notice was posted on the land on October 19, 1977. The judge concluded that the continuity of Dauphinais's use of the land had not been interrupted by the filing of the petition because Dauphinais, who was under no duty to check docket entries daily, did not receive notice of the petition until after the prescriptive period had run.

The judge erred as matter of law. In *McMullen* v. *Porch*, 286 Mass. 383, 388 (1934), the court noted that in cases dealing with writs of entry, adverse possession was interrupted as of the date of the writ, provided that the plaintiff ultimately prevailed, and it concluded: "There seems to be no sound reason for a distinction between a writ of entry and a petition to register title to land with regard to the interruption of adverse possession. The evident purpose of the Land Court act is to provide a method of making titles to land certain and indefeasible, and that purpose can be best served by making the decree relate back to the date of the petition, as prevails in nearly all forms of action." See also *Baumgartner* v. *Doherty*, 286 Mass. 583, 586-587 (1934).

In the judge's view, these cases were not controlling because in both instances consideration had not been given to the chronology presented by the instant situation, that is, notice after satisfaction of the prescriptive period. We, however, do not see that as a critical factor. The filing of a petition is "significa[nt]" to a claim of adverse possession in that "the so called acquiescence of an owner of land in hostile possession thereof, — as distinguished from permission for possession not hostile — implied from the failure of an owner to assert his rights effectively against a person in adverse possession, comes to an end when — and as of the date of the petition — such owner effectively asserts his rights by a petition for registration." *Id.* Thus, the lack of notice to the adverse possessor would be material only to the extent it reflected whether the owner truly intended to assert

his rights. Cf. *Chandler* v. *Dunlop*, 311 Mass. 1, 7-8 (1942) ("[T]he writ must have been 'made out with an unconditional intent to have it served in due course,' if the date thereof is to be regarded as the commencement of the action. *Regan* v. *Atlantic Ref. Co.*, 304 Mass. 353, 354 [1939]").

Notice could not be given to Dauphinais pursuant to G. L. c. 185, §§ 38 & 39, until the title examiner filed his certificate of opinion as required by § 37. The examiner did not file his report until after the prescriptive period had run. The Snows did, however, on March 12, 1975, "cause to be filed in the registry of deeds for each district where any part of the land lies a memorandum stating that the petition for registration has been filed, the date and place of filing, and a copy of the description in the petition of the land." G. L. c. 185, § 27. Cf. *Debral Realty, Inc.* v. *DiChiara*, 383 Mass. 559, 560 (1981). After the examiner filed his report which was adverse to the Snows, they elected to proceed with their petition and notice was given within a reasonable time.[7]

Since the Snows effectively asserted their rights in 1975, and thereafter did nothing which could be construed as a contradiction of that assertion, we conclude that Dauphinais's use of the land, locations 5 and 6, was interrupted on March 5, 1975.

c. *Location 8.* There are two sites of encroachment by Dauphinais at location 8. The first is a road, labeled "Driveway" on the plan appended to the judge's decision, and the second is, as described by the judge, "an enormous pile of sand and gravel" which sits on the northeasterly portion of location 8. It is appropriately designated "Sand-Gravel Pile" on the appended plan. The judge found that Dauphinais's use of the driveway and the sand-gravel pile

---

[7] During oral argument, we were informed that the title examiner's report had been delayed by his lengthy illness. Moreover, the judge's conclusion, that Dauphinais's use was not interrupted until it received notice of the petition, does not rest on any notion of inaction or delay by the Snows.

site commenced in 1937, perhaps earlier. He concluded that Dauphinais had established its claim of adverse possession to the sand-gravel pile area, as well as its claim to a prescriptive right of use of the driveway.[8]

In view of the testimony of Emile Dauphinais describing the nature and the duration of the use of the land, the Snows' challenge to the findings must fail. The statements of Emile and Armand Dauphinais to the effect that they intended to occupy only the land which they had purchased by deed did not preclude the judge from looking to Emile's testimony. *Ottavia* v. *Savarese*, 338 Mass. 330, 334 (1959) ("That the uncommunicated mental attitude of the possessor is irrelevant where his acts import an adverse character to his holding is shown by cases involving disputed boundaries where the possessor intends to hold without intending to deprive any other of what is rightfully his"). See *Brown* v. *Snëider*, 9 Mass. App. Ct. 329, 332 (1980). See also Burby, Real Property § 112; Tiffany, Real Property § 551 (abr. 3d ed. 1970).

5. *Decision and Decree[9] of Registration.*

Dauphinais erroneously claims that the appeal from the judge's decision, as it relates to the petition to register title, is premature. It is the decree of registration issuing under G. L. c. 185, § 47, and not the judge's decision which binds the parties. However, appeals from the decision are authorized by the provisions of the first paragraph of G. L. c. 185, § 15, as appearing in St. 1973, c. 1114, § 25. *Devine* v. *Saugus*, 5 Mass. App. Ct. 885, 886 (1977). The judge's decision and its appended plan provide all the requisite information for the entry of a decree registering title. After

---

[8] It was the judge's understanding, as to the driveway, that Dauphinais did not "claim[ ] title to this road area but rather a prescriptive right to its use." Dauphinais's sole contention on this issue is that "on all [the] evidence the judge was required to find that Dauphinais had acquired full title to the existing way." This does not constitute argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[9] Now a judgment of registration by reason of Mass.R.Civ.P. 1, as appearing in 385 Mass. 1213 (1982), making Mass.R.Civ.P. 54(a), 365 Mass. 820 (1974), applicable to the Land Court.

the decree is prepared, as ordered by the judge in his decision or pursuant to G. L. c. 185, § 33, if Dauphinais is of the view that the decree does not conform to the decision and the judge does not agree, Dauphinais may then pursue the claim it seeks now to assert. See *Hill* v. *Taylor*, 319 Mass. 5, 6 (1946).

6. *Conclusion.*

Having considered all of the claims of the parties,[10] we conclude that the judge's decision as to locations 5 and 6 was erroneous. Accordingly, the decision is reversed. The matters are remanded to the Land Court where a new order for a decree on registration case no. 38771, and a new judgment on miscellaneous case no. 93058, consistent with this opinion, are to be entered.

*So ordered.*

---

[10] Dauphinais has not argued its claim that the judge wrongfully denied its motion to frame jury issues. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).