CLARISSA ALLEN vs. ROSS F. BATCHELDER, trustee,
& others.[1]

Dukes County.  November 14, 1983. — January 27, 1984.

Present: PERRETTA, KASS, & WARNER, JJ.

*Adverse Possession and Prescription.  Tenants in Common.  Notice.
Practice, Civil,* Appeal, Frivolous actions.  *Champertous Agreement.*

Exclusive, open, and notorious possession of certain parcels of land for at
    least ninety years, during which an absent cotenant and his descend-
    ants asserted no claim to the parcels, constituted adverse and nonper-
    missive possession with respect to such claimants, irrespective of
    whether they had knowledge that they had been dispossessed or
    whether those in possession had knowledge of the competing claim.
    [455-457]
Damages and costs under Mass.R.A.P. 25 and 26 were imposed on a party
    whose appeal in a land title registration proceeding was frivolous.
    [457-458]
In imposing sanctions under Mass.R.A.P. 25 on a party who had taken a
    frivolous appeal in a land registration proceeding this court considered
    the champertous origin of the appellant's title challenge. [459]


PETITION filed in the Land Court Department on July 27,
1978.
The case was heard by *Randall, J.*
*John H. Wyman* for Ross F. Batchelder.
*Jane Maslow Cohen* for the plaintiff.
KASS, J.  Sebastian, the tobacco-chewing sheep, would
have been disconcerted by this appeal.  His status as a Mar-
tha's Vineyard tourist attraction was a function of his vis-
ibility on the Allen farm, astride the South Road in Chil-

---

[1] Three other answers were filed by persons who expressed an interest in
Clarissa Allen's registration petition.  They either settled or were other-
wise satisfied with the Land Court's judgment.  Batchelder is the only ap-
pellant.

mark. Sebastian could not have achieved the modest noto-
riety he enjoyed without tenure of the Allen farm by his
owners, Henry and Maude Allen. The appellant, Batch-
elder, has called in question the exclusivity of the Allens'
title, which has come down to Clarissa Allen (Clarissa).
Batchelder espouses a theory that his predecessors in title,
nonpossessory cotenants, were not affirmatively ousted
from possession of the locus and that, therefore, the Allen
family could not, as the Land Court judge determined,
have acquired exclusive title to the farm by adverse posses-
sion. In light of 150 years of well developed case law, we
conclude that the appellant's position is so untenable as to
be frivolous.

The case began with a petition in the Land Court under
G. L. c. 185, § 1, for registration.[2] Clarissa occupies the
locus, consisting of 116.7 acres, which her forebears ac-
quired between 1762 and 1857. Land Court examiners
(there were two) reported a record defect in Clarissa's title
which developed upon the death of Tristam Allen, II, in
1864.[3] Tristam left undivided fractional interests in a por-
tion of the Allen farm to his widow, Tamson. Neither she,
nor persons to whom her interests passed by devise, who
were outside the Allen family, ever occupied the farm or
made claim to any rents and profits from it. Batchelder
claims under that line of title. Clarissa's line, in contrast,
lived on and worked the farm actively.

After a long trial, the Land Court judge found that, at
least from 1892, "the Allen farm was possessed by various
members of the Allen family to the exclusion of any co-
tenant in common." Clarissa's grandfather, Henry Allen,
was well known in Chilmark. He held office as selectman,
assessor, overseer of the poor and town moderator, mani-
festing a bent for public life which a witness, Captain
Poole, attributed to Henry's being "lazier than hell . . . he

---

[2] Catherine B. Allen, Clarissa Allen's mother, joined in the complaint
seeking registration. Subsequently, she conveyed her interest to Clarissa.

[3] Record title was good in the case of one of the eight parcels included in
the locus.

was a typical small-town politician. He'd pat you on the back wherever you met him and agree with you 100 percent." Manifestly, his occupancy of the Allen farm was widely known and far from concealed. Maude, his wife, was the sheep's patroness. Henry's son, Roger, industrious by any measure, ran the farm and used some of the farm's outbuildings for a contracting business. Roger died in 1967, and farming came to a halt. His widow, however, continued to pay taxes on the locus, aggressively posted no trespassing signs, and routinely checked the farm. Clarissa, in 1975, came to live on the farm and to rejuvenate it.

That the Allen family possessed the locus actually, openly and notoriously for at least ninety years is not in controversy. As the judge observed in his detailed and careful decision, the evidence on this score was overwhelming.[4] Sebastian, the sheep, was but a minor example of how closely the Allen family were identified with the farm by residents of Martha's Vineyard. The judge found an equally strong case had been made that the Allen's possession was adverse and nonpermissive and that, accordingly, they had acquired good title by adverse possession to the seven parcels tainted with a record defect. For the elements of adverse possession, see *Ryan* v. *Stavros*, 348 Mass. 251, 262 (1964).

Batchelder's attack is on whether the Allens' possession was adverse and nonpermissive. It is uncontroverted that Clarissa's line was never aware of the claim now pressed on behalf of the Batchelder line and that no one in the Batchelder line was ever cognizant of the potential for that claim until publication of the registration petition in 1980 was called to Batchelder's attention by a William J. Devine. The judge found expressly that during the ninety-year period upon which he concentrated, no claim of title by Batchelder's predecessors was ever made.

Batchelder supports his claim with the argument that the interest of a cotenant cannot be wiped out by prescription

[4] The extensive evidence was adduced by Clarissa. Batchelder offered none.

without an ouster and, more to the point, communication of that ouster to the absent cotenant. It is correct that sole possession by one tenant in common is not in itself adverse to the interest of a nonpossessory cotenant; it could be consistent with the right of the cotenant. *Rickard* v. *Rickard*, 13 Pick. 251, 253-254 (1832). As early as that 1832 case, however, it was regarded by Chief Justice Shaw as equally "well settled, that a long exclusive and uninterrupted possession by one, without any possession, or claim for profits by the other, is evidence from which a jury may and ought to infer an actual ouster." *Ibid*. There need be no "turning out by the shoulders" to manifest a decisive intent to occupy to the exclusion of the absent cotenant. *Doe* v. *Prosser*, 1 Cowp. 217, 218, 98 Eng. Rep. 1052 (1774).[5] The principle has been many times restated or applied. *Lefavour* v. *Homan*, 3 Allen 354, 355 (1862). *Ingalls* v. *Newhall*, 139 Mass. 268, 273 (1885). *Joyce* v. *Dyer*, 189 Mass. 64, 67-68 (1905). *Nickerson* v. *Nickerson*, 235 Mass. 348, 352-353 (1920). *Snow* v. *E.L. Dauphinais, Inc.*, 13 Mass. App. Ct. 330, 334 (1982). In those cases the periods of exclusive possession which worked an ouster varied from thirty to forty-seven years. Clarissa's line has possessed the Allen farm for not less than ninety years. "[M]en do not ordinarily sleep on their rights for so long a period, and a strong presumption arises that actual proof of the original ouster has become lost by lapse of time." *Lefavour* v. *Homan*, *supra* at 355-356.

It distorts the cases cited to find in them a requirement that the absent cotenant must have knowledge that he is dispossessed. Knowledge, when the absent cotenant appeared

---

[5] *Doe* v. *Prosser* was the case which had caused the question to be "well settled" so far as Chief Justice Shaw was concerned. Lord Mansfield in that case expressed himself as "clearly of opinion . . . that an undisturbed and quiet possession for such a length of time [forty years] is a sufficient ground for the jury to presume an actual ouster . . . ." *Doe* v. *Prosser*, 1 Cowp. at 219, 98 Eng. Rep. at 1053. Justice Aston in his opinion in the same case was moved to ask: "What is adverse possession or ouster, if the uninterrupted receipt of the rents and profits without account for near 40 years is not?" *Ibid*.

to have it, was a convenient factor in the equation in *Ingalls* v. *Newhall, supra* at 273-274, and in *Nickerson* v. *Nickerson, supra* at 353. The underlying inquiry, however, has always been what knowledge the absent party "must be deemed to have had." *Ingalls* v. *Newhall, supra* at 274. Precisely how long a possession should be to raise a presumption of ouster depends on many circumstances, *ibid.*, but it is apparent from the cases that ninety years is far more than enough. *Lefavour* v. *Homan, supra* at 355, emphasizes that absence and failure to make a claim, "if unexplained or controlled by any evidence tending to show a reason for such neglect or omission to assert a right," furnishes evidence from which the trier of fact ought to infer an actual ouster and adverse possession. Requiring actual knowledge of disseisin "would deprive the principle of prescription of much of its value in quieting controversy and giving sanction to long continued usages." *Foot* v. *Bauman*, 333 Mass. 214, 217-218 (1955). Long dormant claims to title could rise from the dust bin of history and many titles would become unsettled. This is particularly so in a case such as the instant one, where the absent parties did not live near the locus. Ada Cleveland, who took from Tamson, and her chain of title down to Batchelder, all lived off island. See also *Ottavia* v. *Savarese*, 338 Mass. 330, 333-334 (1959), which disposes of the proposition that the Allens' possession needed to be consciously adverse to the Batchelder line, i.e., that the Allens needed to be aware of the Batchelder claim to defeat it.

We have dwelled at some length on the extensive and decisive case law which defeats this appeal because it bears on how we deal with a motion by the appellee, Clarissa Allen, for damages and costs under Mass.R.A.P. 25, and Mass.R.A.P. 26, both as amended, 378 Mass. 925 (1979). Rule 25 authorizes assessment of damages, as well as double costs of the appeal, in instances where the appeal is frivolous. *Mills* v. *Carlow*, 15 Mass. App. Ct. 1104 (1983). See *Good Hope Refineries, Inc.* v. *Brashear*, 588 F.2d 846, 848 (1st Cir. 1978). See the cases collected in 9 Moore's Federal

Practice par. 238.02 (2d ed. 1983), in which the cognate Federal rule (Fed.R.A.P. 38) has been applied. See also *Katz* v. *Savitsky*, 10 Mass. App. Ct. 792, 798 n.8 (1980). When the law is well settled, when there can be no reasonable expectation of a reversal, an appeal is frivolous. See Note, Penalties for Frivolous Appeals, 43 Harv. L.Rev. 113, 114-116 (1929).

An appeal should not, however, be tarred as frivolous because it presents an argument that is novel, unusual or ingenious, or urges adoption of a new principle of law or revision of an old one. Compare G. L. c. 231, § 6F. In the instant case the appeal covers no ground not gone over by the cases, and the appellant has urged no policy consideration which would warrant reappraisal of the settled rule. Indeed, leading authorities are consistent with the Massachusetts decisions. Restatement of Property § 458 comment i, illustration 9 (1944). 2 & 3 American Law of Property §§ 8.56 & 15.3 (1952). 7 Powell, The Law of Real Property par. 1013[2] (Rohan rev. ed. 1982).

Here, the appellant's case had lost all vestige of merit after the Land Court judge made his decision. A Land Court judge's findings in registration proceedings carry weight even beyond that generally accorded by an appellate court to findings of a trial judge. *Norton* v. *West*, 8 Mass. App. Ct. 348, 350 (1979). Coupled with the strong evidence built up in favor of Clarissa, there was no hope for the appellant on any issue of fact and, indeed, the appellant, Batchelder, attempted no argument aimed at the judge's findings.

The judge's decision also contained a discussion of the relevant authorities, all of which had been copiously cited and discussed in a posttrial memorandum filed on behalf of Clarissa. Before he launched his appeal, therefore, the appellant was fully aware of the powerful precedents built up over the years against the appellant's position. There was no reasonable expectation of a reversal; the appeal was frivolous.

Another aspect of the case warrants comment. Batchelder, a candid witness, testified he resided in Winthrop and knew nothing about the Allen farm on Martha's Vineyard or a potential claim to an interest in it until, as we noted above, William J. Devine brought the possibility to attention. Devine proposed that he would pay the costs of mounting a legal campaign to assert the Batchelder claim and that he (Devine) and Batchelder would share the net proceeds of anything they realized from the litigation. To that end, Batchelder conveyed his interest in the locus, whatever it might be, to a trust of which he and Devine were equal beneficiaries.

This is the third occasion within a year in which we have come across the same pattern of a title challenge induced and financed by Devine. See *Devine* v. *Nantucket*, 16 Mass. App. Ct. 548 (1983), and *Hilde* v. *Dixon*, 16 Mass. App. Ct. 981 (1983). He appears to be a bounty hunter in troubled titles. The appellee has not raised the issue of champerty, but it is a subject to which a court may turn its attention on its own initiative. See *Sherwin-Williams Co.* v. *J. Mannos & Sons*, 287 Mass. 304, 312 (1934); *Baskin* v. *Pass*, 302 Mass. 338, 342 (1939). Champerty is the maintenance, at the champertor's expense, of a legal action in consideration of profit out of the action, if any. *Sherwin-Williams Co.* v. *J. Mannos & Sons*, 287 Mass. at 312. *Pupecki* v. *James Madison Corp.*, 376 Mass. 212, 219 (1978). Devine is not a lawyer, but it is not necessary to be a member of the bar to make a champertous agreement. *Graustein* v. *Boston & Maine R.R.*, 304 Mass. 23, 27 (1939). *Gill* v. *Richmond Co-op. Assn.*, 309 Mass. 73, 76 (1941).

Champerty does not presuppose that the case to be maintained is a frivolous one. It is the latter characteristic which provides the occasion for invocation of Mass.R.A.P. 25. This case's champertous antecedents, however, bear on our willingness to apply the sanctions available under the rule and, as well, color our view of the damages which are appropriate.

Accordingly, the appellee, Clarissa Allen, is to have $5,000 damages on account of her legal fees for the appeal,[6] as well as double costs of the appeal.

The judgment is affirmed. Damages and costs shall be assessed in the Land Court as above provided.

*So ordered.*

---

[6] In support of the appellee's motion for damages and costs, which was filed before oral argument and discussed at argument, her lawyer filed an affidavit of the estimated time spent in preparation and presentation of the appellee's brief and argument (slightly in excess of forty hours) and her (the lawyer's) hourly charge. We consider the time and hourly charge reasonable. See generally *First Natl. Bank* v. *Brink,* 372 Mass. 257, 265-266 (1977); *Salem Realty Co.* v. *Matera,* 10 Mass. App. Ct. 571, 576-577 (1980).