ALBERT J. LAWRENCE vs. TOWN OF CONCORD.

No. 00-P-1757.

Middlesex. May 16, 2002. - September 23, 2002.

Present: GREENBERG, BECK, & GRASSO, JJ.

Further appellate review granted, 438 Mass. 1103 (2002).

*Adverse Possession and Prescription.*

In an action by the plaintiff devisee of a parcel of land for damages under
G. L. c. 79, § 14, following an eminent domain taking by a town that at-
tempted to quiet title to the property, the judge correctly determined that
title was in the town through a specific devise rather than in the plaintiff
through adverse possession obtained by the husband of the heir at law of
the property, where the heir's husband did not attain the requisite "open
and notorious" possession to acquire title by adverse possession, since the
town neither knew, nor reasonably could have known that it acquired an
ownership interest in the property when the last surviving heir died child-
less, and since the heir's husband undoubtedly knew of and concealed that
interest. [73-77]

CIVIL ACTION commenced in the Superior Court Department on
April 8, 1999.

The case was heard by *Elizabeth M. Fahey*, J., on motions
for summary judgment.

*Laurence S. Boisvert* (*Erin R. Boisvert* with him) for the
plaintiff.

*Michael J. Mott* (*Kenneth W. Salinger* with him) for the
defendant.

GRASSO, J. Emerging from the dust bin of history, see *Allen* v.
*Batchelder*, 17 Mass. App. Ct. 453, 457 (1984), is this dispute
over whether Joseph Frazier ever acquired title to 1586 Main
Street, Concord (property) by adverse possession. The question
comes before us in the form of a claim by Albert J. Lawrence,
Frazier's devisee, for damages under G. L. c. 79, § 14, follow-
ing an eminent domain taking by the town of Concord that at-
tempted to quiet title to the property. Lawrence appeals from a

Superior Court judge's determination, on cross motions for summary judgment, that title was in the town through a specific devise rather than in Lawrence via adverse possession obtained by Joseph Frazier.

We conclude that Frazier did not attain the requisite "open and notorious" possession to acquire title by adverse possession. Accordingly, we affirm the grant of summary judgment to the town and the denial of Lawrence's motion.

1. *Background.* For present purposes, the history of the property begins in 1941 with Mary J. Burke, the record owner. On August 27, 1941, Burke executed a holographic will leaving the property to her daughter, Helen Burke Boyer, for life, "never to be sold." The will directed that when Helen died, the property should go to Burke's adopted daughter (and Helen's sister) Harriet Burke Frazier, and that if Harriet died with no surviving children, then the property should go to the town "to be used as they see fit and proceeds from same to be used for better education of some deserving children."

After Mary Burke's death in 1942, her will was probated in Middlesex County. The probate petition was filed by Helen, the nominated executrix and an heir at law, and was assented to by Harriet, the decedent's only other heir at law and next of kin. The petition, which was approved without publication, did not indicate, nor was it required to, that the town had any interest in the property. Nothing in the probate record evidences any notice to the town as a contingent beneficiary. Lawrence does not contend that notice was sent, and the town asserts that it received no notice. Such a notice requirement was not enacted until 1954.[1]

In November, 1964, Helen conveyed her life estate in the property to her sister, Harriet. On May 18, 1965, Harriet died childless, survived only by her husband, Joseph Frazier, with whom she resided. Harriet's death certificate listed the property as her permanent residence. Upon Harriet's dying childless, the property passed to the town under the will of Mary Burke.

---

[1]See G. L. c. 192, § 12, enacted in 1954, providing for notice to beneficiaries by the executor within three months of allowance of the will. When Mary Burke's will was probated, the executrix and the heirs at law were the only persons interested and entitled to notice.

In an inheritance tax filing prepared for the Commonwealth, Frazier correctly omitted the property and reported that the only real estate of which Harriet had died seized was a parcel on Lexington Road, Concord, held with him as tenants by the entirety. Because Harriet's interest in the property ended when she died childless, upon her death she had no interest in the property, which passed to the town not through her estate, but through that of Mary Burke.

With the town unaware that the contingent devise from Mary Burke had ripened into ownership, Frazier continued what, to the town and all the world, appeared to be the same use of the property as when Harriet was alive: he treated the property as his own. From 1968 to 1973 Frazier rented the property to at least two different tenants.[2] From January 1, 1974, until his death on December 24, 1996, Frazier resided at the property, treating it as his primary residence. Frazier gardened and sat out on the porch. His neighbors, many of whom were close friends, believed he owned the property.

From 1965 until 1972, Frazier paid the property taxes, which were assessed in the name of "Harriet Burke Frazier." Similarly, from 1972 until 1979, he paid the taxes assessed to "The Estate of Harriet Burke Frazier." In 1980, for reasons not evident from the record, the property came to be assessed in the name of "Joseph G. Frazier." Frazier paid these tax bills as well. In 1993, during a meeting to discuss his estate, Frazier declined to have a title search run on the property, stating that it would "open a can of worms." By his will, which was allowed by the Middlesex Probate Court on February 24, 1997, Frazier devised "all [his] right, title and interest" in the property to Lawrence.

On April 28, 1997, the town first learned of its interest in the property when counsel for Frazier's estate wrote to the town's legal counsel, advising of the town's potential interest and of Frazier's adverse possession claim. On June 22, 1998, in order to quiet the title, the town seized the property by eminent domain for "municipal purposes, including the future sale thereof." As the owner, the town did not pay itself damages and

---

[2]During this period Frazier lived at the Lexington Road property, from which he operated a convenience store.

did not compensate Lawrence for the taking. This action followed.

2. *Adverse possession.* The elements of adverse possession are well known and oft-recited. A claimant must prove nonpermissive use that is actual, continuous, open, notorious, exclusive, and adverse for twenty years. *Ryan* v. *Stavros*, 348 Mass. 251, 262 (1964). *Kendall* v. *Selvaggio*, 413 Mass. 619, 621-622 (1992). *Totman* v. *Malloy*, 431 Mass. 143, 145 (2000). *MacDonald* v. *McGillvary*, 35 Mass. App. Ct. 902, 903 (1993). The burden of proof rests on the claimant and "extends to all of the necessary elements of such possession." *Mendonca* v. *Cities Serv. Oil Co. of Pa.*, 354 Mass. 323, 326 (1968), quoting from *Holmes* v. *Johnson*, 324 Mass. 450, 453 (1949). Further, "[t]he acts of the wrongdoer are to be construed strictly and 'the true owner is not to be barred of his right except upon clear proof.' " *Tinker* v. *Bessel*, 213 Mass. 74, 76 (1912), quoting from *Cook* v. *Babcock*, 11 Cush. 206, 210 (1853).

We need not dwell upon whether Frazier's possession was exclusive, continuous, and adverse to the town's ownership for a period of at least twenty years. The evidence was ample, and essentially uncontradicted, that, from 1965 until Frazier's death in 1996, it was each of these things. By all appearances, Frazier used the property as any owner would.

Whether Frazier's use was "open" presents a more metaphysical inquiry, but one of no legal consequence because, however analyzed, his use was not open and notorious. To create a prescriptive right, the claimant's use must be both open and notorious. See *Foot* v. *Bauman*, 333 Mass. 214, 218 (1955). "To be open the use must be made without attempted concealment. To be notorious it must be known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over his premises." *Ibid.*, quoting from 2 American Law of Property § 8.56 (Casner ed. 1952). Both requirements serve the same essential purpose: to secure to the property owner a fair chance of protecting himself. *Ibid.* "The guiding principle behind the elements of adverse possession is . . . to provide notice to the true owner, allowing for the legal vindication of property rights." *Totman* v. *Malloy*, 431 Mass. at 145.

Whether analyzed under the rubric of "open" or "notorious," Frazier's use fails the fundamental test of adverse possession. Here, the town neither knew, nor reasonably could have known, of its interest in the property. Moreover, Frazier concealed that of which only he, and no one else with an interest in the property, was aware: that upon Harriet Frazier's dying childless, the property passed to the town under Mary Burke's will.

Frazier's use was not open so as to put the town on notice that its property rights were at risk. Although Frazier did not attempt to conceal that he was using the property, his use was not open because the true owner, the town, neither knew nor reasonably should have known of its ownership or that the nature of Frazier's use changed when Harriet died, becoming adverse to the town's ownership.[3]

Neither was Frazier's use notorious. Nothing in Frazier's conduct or use should have alerted the town, or anyone else, to the town's interest. See *Foot* v. *Bauman*, 333 Mass. at 218. Other than Frazier himself, there was no one with actual or constructive knowledge that Harriet's interest in the property ended when she died childless. Similarly, other than Frazier, whose interest was contrary, there was no one either with knowledge that Mary Burke's specific devise to the town was being thwarted or with an interest in ascertaining that her devise be honored.

There is a critical difference between knowing whether one has been dispossessed of land and knowing whether one has any interest in the land. "From the standpoint of the true owner, the purpose of the various requirements of adverse possession — that the nonpermissive use by another be actual, open, notorious, exclusive and adverse — is to put him on notice of the hostile activity of the possession so that he, the owner, may have an opportunity to take steps to vindicate his rights by legal action." *Ottavia* v. *Savarese*, 338 Mass. 330, 333 (1959). If, as here, the true owner does not know, and could not reasonably

---

[3]Although the facts establish that Frazier attempted to conceal, or, more benignly, neglected to disclose to the town its ownership interest, he did not conceal that he was using the property. On this view, his use was "open," while concealment of the town's ownership interest was ongoing.

have known, that there were property rights to protect, then the purpose is rendered irrelevant. The effect is especially pernicious where, as here, Frazier's possession began permissively under a testamentary devise to his late wife and where the town acquired title pursuant to a testamentary contingent remainder of which it had no notice.

To underscore the importance of notice in adverse possession cases that begin with a tenant's permissive use, we have held that "there is and should be a heavy burden on the lessee or licensee to show by clear evidence that the use has shifted at some point from permissive to adverse, so as to put the owner on clear notice that he should take steps to protect his rights." *Begg* v. *Ganson,* 34 Mass. App. Ct. 217, 221 (1993). Because Frazier's possession began under his late wife's life tenancy and continued, at least until 1980, in his deceased wife's name or that of her estate, his claim may rightly be compared to that of an adverse possessor whose tenancy began as a permissive use. A tenant in such a position cannot pretend for twenty years that his use was permissive and then claim title to the land. Neither should Frazier, who cloaked the adverse nature of his own possession under his wife's once legitimate property interests and worked to perpetuate the town's ignorance of its interest, gain title via adverse possession.

Lawrence reads *Allen* v. *Batchelder,* 17 Mass. App. Ct. at 456-457, too broadly in support of the proposition that an owner need not have knowledge that he is dispossessed. ("Requiring actual knowledge of disseisin 'would deprive the principle of prescription of much of its value in quieting controversy and giving sanction to long continued usages.'" *Ibid.,* quoting from *Foot* v. *Bauman,* 333 Mass. at 217-218.) There, because of exclusive possession and use by a cotenant for a period exceeding ninety years, the court deemed an absent cotenant to have slept on his rights for so long a period as to support a determination of knowledge and of ouster sufficient to be nonpermissive.[4] *Allen* is entirely consistent with the requirement that, while an

_____

[4]Lawrence also cites cases involving boundary disputes to support the contention that a true owner need not know his property rights are being infringed for an adverse possessor to gain title. See, e.g., *Boutin* v. *Perreault,* 343 Mass. 329 (1961). However, knowledge of a boundary is different in kind

owner need not *actually* know of the adverse possessor's presence and actions on his property, the adverse possessor's actions must be such that the owner, if he were reasonably vigilant, should know of the adverse possessor's use of his property. "The underlying inquiry, however, has always been what knowledge the absent party 'must be deemed to have had.' " *Allen* v. *Batchelder, supra* at 457, quoting from *Ingalls* v. *Newhall*, 139 Mass. 268, 274 (1885). A court will infer knowledge, whether it be knowledge of seisin, or dispossession, or of another element of adverse possession, when the facts warrant such an inference. *Ibid.* Here, the town did not know and could not reasonably have known of its ownership.[5] No inference of knowledge would be warranted.

Similarly unpersuasive is Lawrence's argument, grounded in a line of tax taking cases, that the town should have known of its contingent remainder interest in Mary Burke's will. See *Hardy* v. *Jaeckle*, 371 Mass. 573, 579-580 (1976); *Robertson* v. *Plymouth*, 18 Mass. App. Ct. 592, 594 (1984) ("the board of assessors is charged not only with constructive knowledge of the contents of the records in the county's registry of deeds, but may also be charged with knowledge of the contents of records in the county's registry of probate").

We refuse to extend a principle which protects a party's rights in tax takings to Frazier's claim of adverse possession. A municipality can hardly be expected to read every will probated in every county in Massachusetts, or, if the landowner is a nonresident, in the country at large.

Finally, we view the precision of the inheritance tax filing, signed by Frazier, as suggestive of Frazier's awareness, as Harriet's surviving spouse, that he no longer had an interest in the

from knowledge of ownership. In boundary cases, many of which originated in an era of less precision than is now available with modern surveying and global positioning techniques, the focus is upon the owner's vigilance against a neighbor's conduct infringing upon the owner's known property, along imprecise boundary lines. In contrast, when an owner is ignorant entirely of the fact of ownership, the focus is different. Nothing about Frazier's use should have alerted the town that its property rights were threatened because the town was entirely, and understandably, unaware of such rights.

[5]Additionally, in *Allen* there was no evidence that any member of the Allen family ever took steps to conceal from the Batchelders that they were once devised an interest in the property.

property and that, upon Harriet's death, the property had passed to the town.[6] Similarly, we view Frazier's tax payments to the town when the property was assessed in the name of his late wife, and then her estate, as an attempt to further the belief of the town and others that the property was his late wife's and had passed through her estate. By continuing to treat the property after Harriet's death as he had during Harriet's life tenancy, Frazier concealed from the town the true nature of his possession and the town's ownership. In a sense, Frazier perpetuated his concealment in plain view.

Lawrence concedes that the statute of limitations for recovery of land may not run when there is evidence of fraud on the part of the adverse possessor. *Sunter* v. *Sunter*, 190 Mass. 449, 455-456 (1906). See *Harrison* v. *Dolan*, 172 Mass. 395 (1899) (noting no evidence of fraud on adverse possessor's part). Although Frazier's actions do not quite amount to fraud, they suggest concealment and a willingness to perpetuate the town's ignorance of its interest in the property under circumstances where Frazier was in a unique position to know of that interest and the town was not.

In sum, upon the peculiar facts of this case, where the town neither knew, nor reasonably could have known that it acquired an ownership interest in the property when Harriet Frazier died childless, and where Frazier himself undoubtedly knew of and concealed that interest, Frazier's possession was not open and notorious. It would be a perversion of adverse possession and of the testamentary wishes of Mary Burke if by his conduct Frazier could circumvent the specific devise of Mary Burke's will and make himself the residuary devisee.[7]

*Judgment affirmed.*

---

[6]We take note of the fact that Frazier was Harriet's spouse in 1942 at the time of the probating of Mary Burke's will and in 1964 upon the conveyance by Helen Burke Boyer to Harriet, and that as Harriet's spouse he would have an interest in any property which she owned and of which she died seized.

[7]Because we conclude Frazier did not obtain title through adverse possession, we need not address the town's argument that the portion of G. L. c. 260, § 31, which was enacted in 1987 and which prevents the statute of limitations for recovery of land from running when a town holds land for a public purpose, applies to this case.