BENHAM et al. v. BOARDMAN et al.

(Supreme Court, Equity Term, Seneca County. February 16, 1914.)

1. TRUSTS (§ 61*)—TERMINATION—LIFE ESTATE.

The owner of land conveyed it to his son's wife for life, reciting his intent to furnish the wife a home for herself and her husband during her life, at her death the premises to revert to the grantor, and if the son should die before the wife, then she should have the right to sell her interest. Subsequently the grantor conveyed the same premises in trust, in case the son survived his wife, to receive the rents and profits of the premises and apply them to the maintenance of the son for life, and, after the death of the son and his wife and the survivor of them, to sell the property and divide the proceeds among grantor's legal heirs. *Held*, that, the son having died before his wife, the trust terminated and the title reverted to the grantor, subject to the life estate in the son's wife under the first deed.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 83–87; Dec. Dig. § 61.*]

2. LIFE ESTATES (§ 4*)—TERMINATION—ABANDONMENT.

B. conveyed certain real property to his son's wife for life for a home for the son and the wife, she agreeing that she would not sell or lease the premises during her life, but in case of the prior death of her husband, she might sell her interest if she wished to leave. Her husband having died leaving no children she continued to reside on the premises until she was too old to longer live alone there. She sold the farming utensils and went to visit her relatives in another state, keeping a furnished room in the house, and rented the place to others, living on the income derived therefrom. *Held*, that such act was not an abandonment of her life estate in the property.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 6–10; Dec. Dig. § 4.*]

Action by Charles B. Benham and others against Mary E. Boardman and others, to partition certain real property, and for the construction of certain deeds. Judgment for plaintiffs.

George W. Pontius, for plaintiffs.

Daniel W. Moran, of Seneca Falls, for defendant Boardman and others.

William S. MacDonald, of Seneca Falls, guardian ad litem, for defendant Riley.

Kenefick, Cooke, Mitchell & Bass, of Buffalo, for defendant Lehigh Valley Ry. Co. and others.

Charles F. Hammond, of Seneca Falls, for defendant Hamill.

CLARK, J. Deming Boardman, a resident of Seneca county, on the 24th day of August, 1876, deeded to his daughter-in-law, Mary E. Boardman, wife of his son Elijah D. Boardman, the life use of a farm situate in the town of Seneca Falls, which farm consisted of about 50 acres, and fully described in said deed. The conveyance contained the following clause:

"It is the intent of the party of the first part in making this instrument or conveyance to furnish to the said Mary E. Boardman a place for herself and her husband to live during her life, provided the said Mary E. Boardman shall

_____
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

erect ·on said premises a small comfortable house sufficiently large for their use and at the death of said Mary E. Boardman all of said premises, together with any and all improvements which said Mary E. Boardman may build or grow thereon during said term shall revert back to the said Deming Board-man, and whereas it is the intention of said Deming Boardman by this con-veyance to provide a home for the husband of said Mary E. Boardman as well as for herself, it is therefore agreed between said parties hereto, and the said Mary E. Boardman by accepting this instrument, agrees on her part that she will not during her life sell or convey or lease said premises to any person during her natural life, but in case the said E. D. Boardman should die be-fore his said wife dies then she shall have the right to sell her interest if she wishes to leave and go among her friends who live in the West."

Nearly ten years after the making of the last-named deed, and on the 20th day of January, 1886, Deming Boardman conveyed the same premises described in the deed of August 24, 1876, to his son Charles. D. Boardman as trustee, and this later deed contained the following provisions:

"This grant is made to the party of the second part in trust for the follow-ing uses and purposes, that is to say: After the death of Mary E. Boardman, wife of my son Elijah D. Boardman, in case he shall her survive, the party of the second part, as trustee, shall receive the rents, use, income and profits of said premises and apply the same to the support, use and maintenance of my son, Elijah D. Boardman, for and during the term of his natural life, and the said profits or income shall not be liable for or on account of any debts of my said son E. D. Boardman, the intention of this grant being to afford my said son a support during his natural life provided he shall survive his said wife.

"After the death of the said Mary E. Boardman and my son Elijah D. Boardman and the survivor of them, the party of the second part is hereby au-thorized and empowered to sell and convey said premises and to divide the proceeds of such sale among my legal heirs in the same manner as they would inherit the same by the laws of this state.

"The successor of the party of the second part, when legally appointed, to have the same rights and powers herein conferred upon the party of the sec-ond part."

Deming Boardman died intestate December 19, 1891, leaving a large number of heirs at law surviving him, and Charles D. Boardman, the trustee named in the last above-mentioned deed, died in the year 1890, without having executed the power of sale mentioned in said deed, because at the time of the death of said trustee both Elijah D. Boardman and Mary E. Boardman, his wife, were living and occupy-ing the premises described in said deeds. Elijah D. Boardman died in February, 1910, leaving no children, or descendants, or parents, and leaving him surviving his widow, Mary E. Boardman, to whom by his will, subsequently probated in Seneca county, he devised all of his property. The plaintiff and the special guardian for the infant Edith Riley contend that Mary E. Boardman has abandoned the prem-ises and has forfeited her life interest therein, and that a trustee should be appointed to succeed Charles D. Boardman, deceased, the trustee named in the deed of January 20, 1886, above referred to, and that the premises should be sold and the proceeds distributed, but not among the heirs of Deming Boardman who were living at the time of his death, but among those living at the time of the sale of the prem-ises, or their representatives. The only answering defendant, Mary E. Boardman, contends that when Deming Boardman died the prop-

erty in question descended to his heirs at law then living, subject to her life estate, and that her husband, Elijah D. Boardman, on the death of his father, inherited an undivided one-ninth of said premises, and that his brother, Malcolm Boardman, inherited a one-ninth of said premises, which he conveyed to Elijah D. Boardman, and that she is now the owner of the shares of said Elijah D. Boardman and Malcolm Boardman, in addition to her life estate in said property. All parties seem to agree that the property in question is so situated that it cannot be divided without material injury to their rights and interests, and that it should be sold and the proceeds, after paying necessary expenses, should be divided among those entitled thereto, but plaintiff and the special guardian insist that the property should be sold by a trustee to be appointed to succeed Charles D. Boardman. It therefore becomes necessary for the court to construe the two deeds above referred to, and for convenience the second deed given by Deming Boardman to Charles D. Boardman, trustee, dated January 20, 1886, and recorded in Seneca county clerk's office in Liber 106 of Deeds at page 239, will be first considered.

[1] A careful reading of the first deed to Mary E. Boardman, dated August 24, 1876, discloses clearly that the purpose of Deming Boardman in making it was to furnish Mary E. Boardman and her husband, Elijah D. Boardman, a home and place to live in during the life of said Mary E. Boardman. She was to build a house on said premises out of her own means, which she has done, and the evidence on the trial disclosed the fact that she had faithfully carried out her part of the arrangements, and had cared for her husband on said premises during his lifetime. After Deming Boardman made the deed to Mary E. Boardman, August 24, 1876, he evidently appreciated the fact that if she died first, her husband, Elijah D. Boardman, son of Deming Boardman, would be without a home, and then he made and executed the deed dated January 20, 1886, to Charles D. Boardman, as trustee, covering the same property and containing the clauses heretofore quoted. From all the circumstances surrounding the execution of these two deeds, and the evidence given on the trial as to the care Mary E. Boardman gave to her husband, I am satisfied that the purpose of Deming Boardman in making these deeds was primarily to provide a home for his son, Elijah D. Boardman, and his wife, Mary, during their joint lives, he putting the deed of 1876 in the name of his daughter-in-law, Mary E. Boardman, because he evidently thought it was not safe to have his son, Elijah, have control of the property. He had a further purpose, to provide a home for his son, Elijah, in case he should survive his wife, the grantee named in the deed of 1876; hence he made the deed of 1886, to Charles D. Boardman, as trustee. Elijah D. Boardman predeceased his wife, Mary, who still lives. It seems clear that the sole purpose of creating the trust in the deed of 1886 to Charles D. Boardman, trustee, was to provide for Elijah D. Boardman after the death of his wife, and, she having survived him, the trust absolutely failed, and there is at this time no trust existing; consequently the appointment of a new trustee to convey this property, as urged by the plaintiff and the special guardian, would be

an entirely unnecessary proceeding, for there is no trust to execute, and it will not be profitable to spend further time on the trust deed of January 20, 1886.

[2] Elijah D. Boardman and his wife, Mary, lived for many years on the farm in question, and the husband died there February 24, 1910. They never had any children, and Mary E. Boardman, not only out of her own means built a house and outbuildings on the premises in question after they were deeded to her in 1876, but she faithfully cared for her husband up to the time of his death, and after that event she was left entirely alone on this farm. She is a lady past 70 years of age, and it was manifestly improper and unsafe for her to be living alone on an isolated farm, so in March, 1910, she had an auction, sold off the farming utensils, but she continued to reside in the house until the fall of 1910, when she went to visit relatives in the city of Detroit, keeping a furnished room in the house on the farm, and not in any way intending to abandon it as her home and place of residence. She has no income excepting such as has been derived from the farm, and while she has stayed with relatives in Detroit without expense to her most of the time since October, 1910, and has permitted various parties to work the farm, some of whom have lived in portions of the house, she never intended to abandon her home on the farm in question, and rightfully now considers it her home, and I do not think it can justly be held that by anything she has done she has abandoned the property or forfeited her interest therein.

I am not unmindful of the fact that there is a clause in this deed which would seem to prohibit her from conveying or leasing said premises, but it is followed by the statement that she would have the right to sell her interest if she went West among her friends, and if Deming Boardman was willing that she should sell her interest, it is quite reasonable to conclude that that would include the right to temporarily let the property when she was on protracted visits to relatives. Any other construction would be harsh and unreasonable, and not justified by the circumstances surrounding the making of the deed to her, or her subsequent life on the farm in question and her care of her husband.

My conclusion therefore is that Deming Boardman died owning in fee the premises in question, but subject to the life estate created in his deed to Mary E. Boardman, dated August 24, 1876, and that title never vested in a trustee under the trust deed above mentioned, and that on the death of Deming Boardman said real property descended to his then heirs at law; that Mary E. Boardman never forfeited her life estate in said premises, but holds and owns it to-day, and in addition to that she is the owner of an undivided two-ninths interest in said property, one-ninth which her husband inherited from his father at the latter's death, and one-ninth which was inherited by his brother, Malcolm Boardman, and by him conveyed to Elijah D. Boardman by deed dated June 22, 1898, Mary E. Boardman taking these two undivided shares under the will of her husband, Elijah D. Boardman, deceased, and that the infant defendant, Edith Riley, is the owner of a one forty-fifth interest in said premises, subject to said life estate of

Mary E. Boardman; that Mary E. Boardman will be 74 years of age April 26, 1914, and that she is willing to accept a gross sum in cash for her life estate; that the premises are so situated that they cannot be divided without great prejudice to the owners thereof, and that they should be sold by and under the direction of a referee appointed for that purpose, subject to the lease or agreement with defendant Vincent Hamill, which expires April 1, 1914, and that the proceeds of such sale, after paying the costs and expenses of this action and the cash value of the life estate of Mary E. Boardman, be divided among the heirs of Deming Boardman living at the time of his death, and the heirs or assigns, respectively, of such of them as have since died.

Under the circumstances, and considering the extraordinary amount of labor involved in this case, a reasonable allowance should be granted to plaintiff in addition to the usual taxable costs, besides an allowance to the special guardian, but the amount of such allowances, as well as any to other counsel, will be reserved for consideration when the referee's report of sale is confirmed.

Findings may be submitted, and judgment entered in accordance with these views.