## STEPHEN BRADY & another[1] vs. CITY COUNCIL OF GLOUCESTER.

No. 01-P-763.

Essex. May 9, 2003. - October 21, 2003.

Present: DUFFLY, CYPHER, & COHEN, JJ.

*Municipal Corporations,* City council. *Zoning,* Special permit. *Real Property,* Tenancy in common.

A city's council, acting as a special permit granting authority under G. L. c. 40A, § 17, reasonably could require applicants for a special permit for the construction of a stone patio on property owned by the applicants as tenants in common with more than twenty other individuals to identify the names of their cotenants on the special permit application. [694]

A city's council, acting as a special permit granting authority under G. L. c. 40A, § 17, could concern itself with the nature of the ownership interest of applicants for a special permit for the construction of a stone patio on property owned by the applicants as tenants in common with more than twenty other individuals, and reject the application on that basis when other cotenants expressed their opposition, where, although the applicants had a sufficient interest in the property as tenants in common to apply for a permit and did not have to be the sole owners in order to do so, objections by some of the cotenants made it evident that the applicants lacked the right to proceed with their particular project. [694-698]

CIVIL ACTION commenced in the Superior Court Department on March 23, 1999.

The case was heard by *Leila R. Kern,* J.

*J. Michael Faherty* for the plaintiffs.

*Linda Thomas Lowe* for the defendant.

COHEN, J. The city council of Gloucester (council), acting as a special permit granting authority under G. L. c. 40A, § 17, denied the plaintiffs a special permit for the construction of a stone patio on property owned by the plaintiffs as tenants in common with more than twenty other individuals. A judge of

---

[1]Sheila Brady.

the Superior Court upheld the council's decision, ruling that it was legally tenable and reasonable for the council to deny the permit on "ownership" grounds after three of the cotenants objected to the project. The plaintiffs appeal, contending, in essence, that the council should not have concerned itself with the question of ownership. We affirm.

*Background.* Since 1997, the plaintiffs have owned shorefront property at 14A Hesperus Circle, in the Magnolia neighborhood of Gloucester. The plaintiffs' lot originally was part of a subdivision owned by the Magnolia Shore Association, which, after conveying the buildable portions of the subdivision, conveyed a fee interest in the rocks along the shoreline to all of the subdivision property owners, as tenants in common. Currently, there are at least twenty cotenants,[2] including the plaintiffs. The plaintiffs' backyard directly abuts the rocky, commonly owned shorefront area.

In 1998, after securing from the Gloucester conservation commission (commission) both an order of conditions pursuant to G. L. c. 131, § 40, and a local wetlands permit, the plaintiffs began constructing a circular stone patio and steps to the shoreline. The patio extended from the plaintiffs' lot and was situated primarily on the commonly owned property. The plaintiffs' immediate neighbors both had similar stone patios and steps, but it was not established on the record when or how they came to be built.[3]

The plaintiffs soon discovered that commission approval was insufficient to allow their project to go forward, because § 5.5.4 of the Gloucester zoning ordinance required that they also obtain a special permit from the council before building upon coastal land.[4] After the city building inspector began an enforcement action, the plaintiffs applied for a special permit.

---

[2]Because some of the original lots later were subdivided further, it is unclear exactly how many cotenants there are.

[3]There was no evidence before the council or at trial that permits were sought and obtained for these improvements; nor was it established that any cotenants objected to their construction.

[4]As then written, § 5.5.4 read: "No person shall remove, fill, dredge or build upon any bank, marsh, swamp, or flat bordering on coastal or inland waters or any other land subject to tidal action or coastal storm flowage without a Special Permit from the City Council. Such permit shall be issued

In their application, the plaintiffs listed themselves as owners without indicating that there were other tenants in common. When it became apparent that the plaintiffs were not the only owners of the site, the council's planning and development committee made an unfavorable recommendation to the full council. After a public hearing, at which three cotenants testified in opposition to the project,[5] the council voted to deny the permit because "other owners share ownership with the applicant."[6]

The plaintiffs appealed to the Superior Court, pursuant to G. L. c. 40A, § 17, and the requisite trial de novo was held, jury-waived. One of the objecting cotenants testified in opposition to the project, citing interference with her safety and enjoyment of the shoreline, including her ability to walk unimpeded along the rocks. A member of the council, in testimony the court credited, stated that ownership of the property was of concern to the council when any application was submitted for a special permit and that she and other members of the council regularly ascertained an applicant's ownership status.

The judge concluded that, because the ownership issue was raised by other tenants in common, and because it was the council's practice to consider ownership in reviewing applications, the denial of the permit was not unreasonable. The judge observed further that even though the plaintiffs' neighbors' patios extended onto the commonly owned rocks, this did not indicate that the council was being arbitrary or capricious in

---

only upon determination that the requirements of the Hatch Act [G. L. c. 131, § 40] and the Jones Act [G. L. c. 130, § 27A] have been satisfied, and that such removal, filling, dredging or construction will not pose a hazard to health or safety, and will be so executed as to conserve the shellfish and other wildlife resources of the City." Because the Jones Act had been repealed, and the Hatch Act conditions had been satisfied, the plaintiffs believed that they met all substantive requirements of § 5.5.4.

[5]Those who testified claimed to be representative of widespread opposition. Their position was not universal, however, as there were six cotenants who filed letters with the council indicating that they had no objection to the plaintiff's application.

[6]The council also cited another reason: that "the property which is the subject of the application is an unnumbered lot showing no definitive footage, and is therefore, insufficiently defined for Special Permit purposes." This second reason was not passed upon by the trial judge and is not argued to us on appeal. We express no opinion as to its adequacy.

disallowing the plaintiffs' patio, because there was no evidence as to the permitting history, if any, for the neighbors' projects.

*Discussion.* There are two facets to the parties' dispute that require discussion. An initial question is whether the council reasonably could require the plaintiffs to identify the names of their cotenants on the special permit application. There also is the more substantive question whether the council could concern itself with the nature of the plaintiffs' ownership interest and reject the application on that basis when other cotenants expressed their opposition.

With respect to the first issue, we have no difficulty with the council's insistence that the plaintiffs had to disclose the other owners in their application when this was in keeping with the council's established practice and was not an ad hoc, arbitrary demand. While it may have been better for the council to embody this requirement in a formal regulation, it was within its discretion to define the contents of the application to include the identities of all of the owners, if only to facilitate compliance with the provisions of G. L. c. 40A, § 11 (e.g., the requirement under that section that, if a permit is granted, the "special permit granting authority shall issue to the owner and to the applicant if other than the owner a copy of its decision").

The second issue, whether and to what extent the council could take into account the nature of the plaintiffs' ownership, is more complex. As a general principle, an applicant for zoning relief need not always be the owner of the property in question, so long as the applicant has an interest in the property that warrants consideration. See, e.g., *Carson* v. *Board of Appeals of Lexington*, 321 Mass. 649, 652 (1947) (company under conditional contract to purchase land could apply for permit); *Dion* v. *Board of Appeals of Waltham*, 344 Mass. 547, 554-555 (1962) ("straw" could apply for variance as fiduciary or agent for owner). See also G. L. c. 40A, § 11 (referring to "owner" and "applicant if other than the owner"). Consistent with this principle, we agree with the plaintiffs that, as tenants in common, they had a sufficient interest in the property to apply for a permit and did not have to be the sole owners in order to do so.

When some of the plaintiffs' cotenants objected, however, it became evident that the plaintiffs lacked the right to proceed

with their particular project. In these circumstances, we think ownership became a proper concern of the council and could serve as a valid basis for denying zoning relief.

The inability of the plaintiffs to prosecute the project resulted from the inherent limitations of a tenancy in common. When property is owned by tenants in common, each cotenant has an undivided fractional interest and the right to possession and use of the entire property. See *Tucci* v. *DiGregorio*, 358 Mass. 493, 497 (1970). A cotenant's use of the property may not, however, preclude other cotenants from exercising their right to possession, as doing so destroys the common estate. See *Muskeget Island Club* v. *Prior*, 228 Mass. 95, 96-97 (1917).

Permanent additions to the commonly owned property generally are deemed to be destructive of the common estate. That is because such additions appropriate to one cotenant an exclusive right to use and possession of the improved portion of the property. See *Bennett* v. *Clemence*, 6 Allen 10, 18 (1863) (small portion of building extending onto commonly held land); *Capen* v. *Leach*, 182 Mass. 175, 176 (1902) (erection of granite monument); *Muskeget Island Club* v. *Prior*, *supra* (erection of substantial wooden building resting upon posts). On the other hand, impermanent, easily removable structures are not inconsistent with the rights of other cotenants. See *Ingalls* v. *Newhall*, 139 Mass. 268, 273 (1885) (boathouse built of light materials, placed on the ground, and susceptible of easy removal, was not a permanent structure and hence not an appropriation of common property). See also *Keay* v. *Goodwin*, 16 Mass. 1, 3-4 (1819) (storage of lumber on commonly held property did not require permission of cotenants).[7]

The present case is a relatively clear example of an alteration that exceeds the limitations of a tenancy in common. Even though the proposed patio would not physically exclude other cotenants in the same manner as, say, a complete building, the nature of the proposed project is such that it would result in permanent "property forced upon [the other cotenants]," *Ben-*

---

[7]These are the principles that govern the plaintiffs' rights in this case, and not the equitable principles applicable to the respective use of property by owners and easement holders. Accordingly, the plaintiffs' reliance upon *Shapiro* v. *Burton*, 23 Mass. App. Ct. 327, 334 (1987), is not apt.

*nett* v. *Clemence, supra* at 19, and thus destroy the common estate.

As described in the record and depicted in the photographic exhibits, the partially completed structure is large (twenty feet in diameter) and constructed of heavy stone. Although one of the plaintiffs testified at trial that the patio was composed solely of existing rock material, it appears from the photographic exhibits that other permanent construction material (concrete or mortar) was used to assemble the stones and to create the steps to the beach. Even in its unfinished state, the project is substantial and incapable of easy removal. Thus, it is far more like the offending structures in *Capen* v. *Leach, supra*, and *Muskeget Island Club* v. *Prior, supra*, than the easily dismantled boathouse in *Ingalls* v. *Newhall, supra*.

Another way to approach the issue is by considering the related question whether, if extant without objection for a period of twenty years, the structure would work an ouster of the cotenants. See *Bellis* v. *Bellis*, 122 Mass. 414, 415 (1877). Although possession by one tenant in common is not in itself adverse to the interest of another cotenant, "[t]here need be no 'turning out by the shoulders' to manifest a decisive intent to occupy to the exclusion of the absent cotenant." *Allen* v. *Batchelder*, 17 Mass. App. Ct. 453, 456 (1984) (citation omitted). The proposed structure in this case plainly manifests such an intent. Indeed, its location directly adjacent to the plaintiffs' yard strongly supports the conclusion that its character is that of an exclusive appurtenance to the plaintiffs' property.

Even if, as the plaintiffs argued at trial, they would allow the other cotenants to use the patio, the problem would not be solved. The fact that other cotenants might have permissive use of the patio would "not take away the exclusive character of the [plaintiffs'] possession." *Bellis* v. *Bellis, supra* at 416. In short, under long-standing principles of tenancy in common, the plaintiffs had no right to construct the proposed patio over the objection of other cotenants.

The question remains whether the issue of cotenant rights was a proper concern of the council. The plaintiffs correctly point out that zoning authorities are not the arbiters of private property disputes between landowners. See *Hahn* v. *Planning*

*Bd. of Stoughton,* 24 Mass. App. Ct. 553, 555 (1987). Such disputes are for the courts, falling under the original jurisdiction of either the Land Court or the Superior Court. See G. L. c. 185, § 1; G. L. c. 212, § 4. Thus, the plaintiffs contend, the council had no business deciding whether the plaintiffs had an unfettered right to build their patio; that issue was for the cotenants to take up in court. According to the plaintiffs, the council's only concern should have been whether the plaintiffs' project was in compliance with § 5.5.4 of the Gloucester zoning ordinance. Here, we disagree.

Even though it is not the role of permit-granting authorities to decide property disputes, they nonetheless may find it necessary to address questions of ownership in the course of their work. This is well illustrated by cases arising in the subdivision approval context, where it has been held that a planning board may enforce a provision in its rules and regulations requiring that the applicant be the owner of record or his agent and that a subdivision plan identify the record owners of the site. See *Kuklinska* v. *Planning Bd. of Wakefield,* 357 Mass. 123, 129 (1970); *Batchelder* v. *Planning Bd. of Yarmouth,* 31 Mass. App. Ct. 104, 106-107 (1991); *Silva* v. *Planning Board of Somerset,* 34 Mass. App. Ct. 339, 341 (1993).

These cases recognize that a planning board has a legitimate interest in ascertaining whether the applicant has (or prospectively will have) sufficient ownership rights in the property to go forward with the project. Where encumbrances on title do not impair the applicant's rights to prosecute the proposed development, denial on that basis is not warranted. See *Hahn* v. *Planning Bd. of Stoughton, supra* (easement that did not conflict with subdivision was no impediment to planning board approval). But when an ownership issue adversely and substantially affects the development or use of the proposed project, the reviewing board need not ignore that reality.

In the narrow circumstances presented by this case, we think the underlying rationale of the planning board cases applies and that the council reasonably could deny the plaintiffs' application based upon ownership considerations. That is because, without the acquiescence of the other cotenants, the permanent construction of a sizeable stone patio on commonly owned land was, by

its nature, inconsistent with the limited ownership rights of the plaintiffs.

We recognize that a different result might be warranted in a case involving a genuine issue as to the permanence and scope of the intended improvement. In such a case, the courts and not the permit granting authority should determine whether a cotenant's proposed addition would destroy the common estate. Here, however, the council was entitled to deny a special permit for a project that the plaintiffs plainly did not have the legal right to prosecute. It was not required to go forward with a permitting process that ultimately would be futile.

We therefore affirm the judgment of the Superior Court upholding the council's denial of the plaintiffs' application for a special permit.

*So ordered.*