SUE-ELLEN HERSHMAN-TCHEREPNIN *VS.* NICHOLAS TCHEREPNIN
& others.[1]

No. 06-P-1677.

Middlesex. June 8, 2007. - September 24, 2007.

Present: GELINAS, DOERFER, & KAFKER, JJ.[2]

Further appellate review granted, 450 Mass. 1103 (2007).

*Will,* Construction. *Tenants in Common.*

In a dispute over a devise of certain real property in a will, the probate judge
erred in concluding that the testator devised a life estate in the property to
his wife, the petitioner, where the language of the will did not demonstrate
an intention to provide the petitioner with control over and responsibility
for the property, but rather provided the petitioner and each of the testator's
four children with a one-fifth present possessory interest in the property as
tenants in common. [221-227]

PETITION for partition and sale of real estate filed in the Middle-
sex Division of the Probate and Family Court Department on
June 4, 2004.

The case was heard by *Dorothy M. Gibson,* J., on motions for
summary judgment, and entry of separate and final judgment
was ordered by her.

*Diane C. Tillotson* for the defendants.

*John C. LaLiberte* for the plaintiff.

KAFKER, J. Composer Ivan Tcherepnin[3] drafted his last will
and testament less than one month prior to his death. In it, he
bequeathed one-fifth of the family home and "the right to remain
there for as long as she desires" to his friend and recent bride,
the petitioner, Sue-Ellen Hershman-Tcherepnin. He also be-
queathed one-fifth of the family home to each of his four chil-
dren by an earlier marriage to Anne Tcherepnin.

---

[1] Stefan Tcherepnin, Sergei Tcherepnin, and Sarina Tcherepnin-Morris.

[2] Judge Doerfer participated in the deliberation on this case prior to his
retirement.

[3] Ivan Tcherepnin was a highly regarded musician and composer, and served
on the faculty of Harvard University for twenty-five years, where he was head
of the electronic music studio.

The children contend that he bequeathed a present possessory interest in the property to all five devisees. The petitioner contends that he bequeathed to her a life estate in the property, with the right to exclusive possession, and a one-fifth remainder interest to each of the four children. Taking into account the instrument as a whole and all the circumstances known to the testator at the time he executed the will, we conclude that the testator devised a one-fifth present possessory interest in the property to the petitioner and each of his four children, making them tenants in common.

*Facts.* The property in dispute, 96 Russell Avenue, Watertown, was previously owned by the stepfather and mother of Anne Tcherepnin. They transferred title to the property to Anne and the testator in 1983. Anne and the testator resided at 96 Russell Avenue with their four children — Nicholas, Stefan, Sergei, and Sarina, the respondents in this case. Pursuant to the terms of their marital separation agreement, Anne transferred title to the property to the testator in September, 1994. After the divorce, Nicholas, Stefan, and Sergei continued to maintain bedrooms in their father's house, Stefan living in the residence from 1994 until "some time in 2000," and Sergei visiting "nearly every weekend."[4]

In January, 1995, the petitioner, a friend of the testator for a number of years, moved into 96 Russell Avenue. The testator became ill that same year, the illness becoming worse in late 1997 and early 1998. In late December, 1997, the petitioner and the testator were married. They continued to reside at 96 Russell Avenue. Using a computer software program, the testator drafted the will at issue on March 13, 1998. At the time the testator's will was signed, he lived at 96 Russell Avenue along with the petitioner, Stefan, and Stefan's girlfriend. Less than one month later, on April 11, 1998, the testator died.

The relevant portions of the will are as follows:

"SIXTH: I give one fifth ($^{1}/_{5}$) ownership of the property at 96 Russell Avenue, Watertown, Ma., the right to remain

---

[4]According to the petitioner, Stefan lived in the house after 1995 pursuant to a contract that defined his obligations to seek work, perform household chores, and abide by appropriate standards of behavior. The contract is not a part of the record in this case.

there for as long as she desires, and her choice of furnishings and bric-a-brac[] in my house and office, my Macintosh IIci, monitor and TI laserprinter, fifty thousand (50,000) dollars in cash or stocks, my 1987 SAAB automobile and the print 'Boy and Bug' by Margo Hoff to Sue Ellen Hershman-Tcherepnin. . . .

". . .

"TENTH: I give one fifth (¹/₅) of the property at 96 Russell Ave., Watertown and its furnishings, and all photos and documents pertaining to my mother[,] to Sarina Tcherepnin. . . .

"ELEVENTH: I give one fifth (¹/₅) of the property at 96 Russell Ave., Watertown and its furnishings, the Macintosh 5300 powerbook and accessories and the Sharp videocamcorder and tripod to Nicholas Tcherepnin. . . .

"TWELFTH: I give one fifth (¹/₅) of the property at 96 Russell Ave., Watertown and its furnishings, Macintosh 660AV and accessories, psalteries and santur, electronic music instruments, including Serge Modular stuff, and the Steinway grand piano[,] to Stefan Tcherepnin. . . .

"THIRTEENTH: I give one fifth (¹/₅) of the property at 96 Russell Ave., Watertown, one fifth (¹/₅) of all furnishings, all photographic equipment and the Sony Hi-8 videocam and accessories to Serge Tcherepnin, my son."

Probate of the will was allowed in the Probate and Family Court in Middlesex County.

After the testator's death, the petitioner and Stefan continued to reside at 96 Russell Avenue; Stefan moved out some time in 2000.[5] From 1998 to 2000, the testator's estate, managed by his brother, Peter Tcherepnin, the executor of his will, paid the taxes and mortgage on the property. Since "early 2000" the petitioner has paid all taxes assessed upon the residence, the mortgage, and all maintenance, repairs, upkeep, and homeowner's insurance. In 2000, Sarina and her husband negotiated with the

---

[5]In December, 1999, one Gerald Belastock moved into the residence, where he continues to reside.

petitioner regarding a purchase of the property but did not reach an agreement. In 2002, the petitioner changed the locks on the residence, alleging that the testator's children had removed from the residence various items, including a laptop computer, the testator's diaries, and works of art.

On June 4, 2004, the petitioner filed a petition for partition of the real property at 96 Russell Avenue. The petition states that she, as well as Nicholas, Stefan, Sergei, and Sarina, each possess twenty percent remainders in said property. Further, the petition represents that the petitioner possesses a "right to occupy for life."

The respondents (Nicholas, Stefan, Sergei, and Sarina) filed a response to the petition and a counterclaim for declaratory judgment in which they contended that the will created five equal present interests in the property and granted the petitioner "a mere right of occupancy and a defense to ouster and partition." Cross motions for summary judgment were subsequently filed.

On September 23, 2005, a probate judge found that "[t]he four corners of Testator's Will indicate unambiguously that he intended to grant [petitioner] a life estate in the Russell Avenue Property with the exclusive right to reside on the premises." The judge also determined that the will provided the petitioner and each of the four children with a one-fifth remainder interest in the property. In so deciding, the judge declined to consider extrinsic evidence regarding the testator's intent. Finally, the judge allowed the petitioner as a life tenant to seek partition of the property.

The respondents filed a notice of appeal on June 23, 2006. Thereafter, on May 21, 2007, the probate judge found the fair market value of the property to be $790,500. The judge valued the petitioner's life estate at $613,169.86 and the remainder interest, divided among the petitioner and the four children, at $177,330.14.

*Discussion.* "The fundamental object in the construction of a will is to ascertain the testator's intention from the whole instrument, attributing due weight to all its language, considered in light of the circumstances known to the testator at the time of its execution, and to give effect to that intent unless some positive rule of law forbids." *Flannery* v. *McNamara*, 432 Mass.

665, 667-668 (2000), quoting from *Putnam* v. *Putnam*, 366 Mass. 261, 266 (1974). See *Tucci* v. *DiGregorio*, 358 Mass. 493, 495 (1970), quoting from *Ware* v. *Minot*, 202 Mass. 512, 516 (1909) ("[t]he accepted rule for the interpretation of a will is to ascertain the intent of the maker as gathered from the testamentary language read in the light of the knowledge possessed by him and of the material circumstances attendant upon him at the time, attributing due weight to all the words used, not stressing provisions of doubtful meaning but searching for a general plan from a survey of the whole instrument . . .").

The bequests here are not easily classified. The testator was not learned in the law, and, not surprisingly, he used layman's language rather than legal terms of art. See *Barrett* v. *Marsh*, 126 Mass. 213, 215 (1879) ("[i]t is easy to see that the will . . . was not the work of an accomplished conveyancer"); *Dow* v. *Abbott*, 197 Mass. 283, 287 (1908). The testator gave one-fifth of the property to the petitioner and each of the four children. These bequests were not described as remainder interests. They appear to make a present transfer of the property to the five devisees. This would ordinarily make them tenants in common, with the right to use and occupy the property subject to the equal rights of the other tenants. See G. L. c. 184, § 7 ("A conveyance or devise of land to two or more persons . . . shall create an estate in common"). See also *Tucci* v. *DiGregorio*, 358 Mass. at 497; *Brady* v. *City Council of Gloucester*, 59 Mass. App. Ct. 691, 695 (2003). The question is how these provisions are affected by the additional language allowing the petitioner to remain in the home so long as she desires. The petitioner contends that this additional clause provides her with a life estate and thereby renders the other bequests only remainder interests.

The testator did not use the classic formulations of a life estate. See, e.g., Restatement of Property § 18, at 46 (1936) ("to A for his own life" creates a life estate). Nor did he use essentially equivalent language. See, e.g., *Thayer* v. *Shorey*, 287 Mass. 76, 78-79 (1934) ("grantor's reservation of 'right to occupy, rent, or improve . . . premises during her life' . . . operate[d] to seise the grantor of a life estate and . . . to vest the remainder in the grantee"); *Langlois* v. *Langlois*, 326 Mass. 85,

86 (1950) ("to have and to hold and use . . . as she see[s] fit during her lifetime"); *Breare* v. *Assessors of Peabody*, 350 Mass. 391, 392-393 (1966), and authorities cited (grantor's reservation of "right to occupy the premises with the grantee during the term of his natural life" created a life estate); *Bernat* v. *Kivior*, 22 Mass. App. Ct. 957, 958 (1986) ("right[] . . . to occupy the granted premises for the rest of her life" conferred life estate). Compare *Rolland* v. *Hamilton*, 314 Mass. 56, 57-58 (1943) (devise made until the death of the devisee held to create a life estate; court observed that "[i]t is not essential that the words 'for life' or their precise equivalent be used in order to create a life estate" [citation omitted]).

There is little authority in Massachusetts defining the legal interest created by a devise, as here, of "the right to remain there so long as [one] desires." In *Wilmarth* v. *Bridges*, 113 Mass. 407, 408, 410 (1873), the testator bequeathed to his daughter, "in view of her misfortunes, present circumstances, and her attention to and care of her parents, the use and improvement of all my real estate . . . so long as she chooses personally to occupy and improve the same; on condition of her keeping the building in repair and paying the taxes and cost of insurance . . . ." The Supreme Judicial Court, without elaboration, interpreted this bequest to provide a life estate defeasible by termination of occupancy or death. In *Hesseltine* v. *Partridge*, 236 Mass. 77, 79, 81 (1920), however, the testator's devise to his widow of " 'the use and occupation' of his house in Melrose, 'so long as she shall desire to reside therein,' " was described as "an interest in real estate of an unascertained, and probably indeterminate, value."

A review of other jurisdictions also confirms that "very little can be laid down by way of rule or generalization" in defining the legal interest created by the right to remain in a home so long as a devisee desires. Annot., Quantum or Character of Estate or Interest Created by Language Providing Premises as a Home, or Giving or Granting Same for Such Use, 45 A.L.R. 2d 699, 700 (1956). Language similar to that used by the testator here has been interpreted by courts in other jurisdictions to create either a defeasible life estate or a more limited right of occupancy, depending on other provisions in the will and the circumstances of its formulation.

a. *Limited right of occupancy.* In *Cruse* v. *Reinhard,* 208 S.W.2d 598, 601 (Tex. Ct. App. 1948), for example, the court considered a bequest providing, "It is my will and wish that my daughter Ethel continue to live in my home till and unless she wishes to change her residence . . . ." The court held that the bequest did not create a life estate. The court focused on the literal meaning of the words selected, emphasizing that the bequest was of "the right to *live* in the 'home,' " as opposed to the right to the " 'home' itself." *Id.* at 605. As the testator was not learned in the law, the court emphasized that it was interpreting the words literally and "avoiding implications which might occur only to a lawyer." *Id.* at 604. The court also relied on the failure of the testator to provide her daughter with the right to receive income from the property or to charge her with the responsibility to pay its liabilities, including taxes, insurance, and repairs. *Id.* at 606. For other cases rejecting life estates in favor of much more limited rights of occupation or their equivalent, see *Day* v. *Tribble,* 233 Ga. 242 (1974); *Lewis* v. *Atkins,* 122 Ind. App. 618 (1952); *Hill* v. *Smith,* 51 N.C. App. 670 (1981); *Baldesberger* v. *Baldesberger,* 378 Pa. 113 (1954).

b. *Defeasible life estate.* Other jurisdictions, however, have interpreted language providing a right of personal occupation to create a life estate defeasible by the grantee's abandonment of the property. See Annot., 45 A.L.R. 2d 699, *supra.* Many of these cases are distinguishable from the right of occupancy cases because they concern wills that reference the "life" of the devisee or use other language indicative of a life estate in the bequest. See *Taylor* v. *McCowen,* 154 Cal. 798, 800 (1908) (devisee was granted land "for the term of her natural life . . . should [she] remove permanently from said lands during the period of her lifetime then and in that case the said lands shall become the absolute property of [testatrix's nephew]"); *Benham* v. *Boardman,* 146 N.Y.S. 434, 435, 437 (Sup. Ct. 1914) (will granting the devisee a farm on which "to live during her life . . . not [to] sell or convey or lease" created a defeasible life estate); *Brinkley* v. *Day,* 88 N.C. App. 101, 102-103 (1987) (will providing that the wife "is to live in the apartment presently occupied by her now for her lifetime rent free, tax free . . . insurance and maint[en]ance . . . free" created a life estate); *Boulevard from Second St.,*

230 Pa. 491, 493, 494 (1911) (will providing that property "shall be held and enjoyed by them during all the term of their natural lives . . . upon the express condition that they shall make the homestead property . . . their place of permanent residence" created a life estate).

Still other jurisdictions, however, find defeasible life estates even in the absence of references to the life of the devisee. See *Kelly* v. *Kelly's Ex'r*, 299 Ky. 861, 862, 866 (1945) (where the testator granted his wife the right to "have and enjoy a homestead in my farm if she cares to live upon it, but if not, then it is my will that she have her dower interest in my farm," the court held that these words granted the wife the option to take either a life estate or a dower interest). See also *Estate of Peacock*, 914 F.2d 230, 231, 233 (11th Cir. 1990) (will provision that gave the husband the right "to occupy said property for as long as he desires" and required him to pay the taxes on the property and keep it fully insured and in a reasonable state of repair created "a degree of beneficial enjoyment of the property equivalent to a life estate" under Alabama law). In sum, "[t]he question of what character or quantum of estate or interest is created by a will, deed, or other instrument which . . . purports to establish premises as a home for one or more designated persons, is plainly one of the intent and true construction of the particular instrument." Annot., 45 A.L.R. 2d at 700.

Our interpretation of the language of this particular provision, in these circumstances, leads us to conclude that the testator intended to provide the petitioner only with a one-fifth present possessory interest in the property as a tenant in common with the children. The bequests of one-fifth of the property were not phrased as remainder interests. The testator did not devise the property to the petitioner for her life. Rather, he only provided her with the right to "remain" in the family home, compare *Cruse* v. *Reinhard*, 208 S.W.2d at 601 (no life estate where the daughter was given the right to "continue to live in my home till and unless she wishes to change her residence"), which, at the time the will was executed, was occupied by other family members as well. As the testator was "not versed in the niceties of legal nomenclature," *Dow* v. *Abbott*, 197 Mass. at 287, we place special emphasis on the literal meaning of the words he

selected. *Cruse* v. *Reinhard, supra* at 605. Unlike the situation in *Wilmarth* v. *Bridges*, 113 Mass. at 408, the testator here did not provide the petitioner with the responsibility of maintenance and the payment of taxes and insurance.[6] Thus, the will does not demonstrate an intention to provide the petitioner with control over and responsibility for the property. See *Cruse* v. *Reinhard, supra* at 606 ("right of occupancy and nothing more"). Contrast *Estate of Peacock*, 914 F.2d at 231.

In addition, providing the petitioner with a life estate, with the right to exclusive possession, undermines the over-all intention in the will, see *Tucci* v. *DiGregorio*, 358 Mass. at 495; *Flannery* v. *McNamara*, 432 Mass. at 667-668, to provide an equal and shared right to the property. The property was the family home. At the time the will was executed one child was living there, albeit subject to the testator's stated conditions, and another, then still a minor and living with his mother, was visiting nearly every weekend. In the will, ownership of the home was devised in five equal parts. Contrary to the petitioner's contention, nothing in the will suggests that the testator intended to grant her such a disproportionate interest in the property.

We also do not discern an over-all intention in the will to provide the petitioner with the right to exclude the children from the family home. The right to "remain" in the home appears to provide the petitioner with a right of occupancy, but not an exclusive one.[7] Tenants in common, of course, "may not . . . preclude other cotenants from exercising their right to possession, as doing so destroys the common estate." *Brady* v. *City Council of Gloucester*, 59 Mass. App. Ct. at 695.

We understand that the petitioner is the only individual who has been expressly provided the right to remain in the house. Likewise we recognize that as a tenant in common she had a right to occupy the house, as did the children. The disputed

---

[6]The fact that the petitioner took over these responsibilities around 2000 is not demonstrative of the intention of the testator and is therefore irrelevant.

[7]We note that it was the petitioner who sought partition, not the respondents. As we conclude that the bequest did not provide the petitioner with a life estate, we need not resolve the issue whether a petition for partition by the holder of a life estate defeasible by the termination of the recipient's desire to occupy the property is defeased by the filing of the petition to partition itself. The parties have provided us with very little guidance on this issue in their briefing.

provision therefore appears unnecessary or precatory. The circumstances of the bequest, however, explain the testator's decision to include such a provision. He was not a lawyer, and the will demonstrates he had little familiarity with property law, including, we assume, the rights incident to tenancy in common. He was also seriously ill and newly married. The primary asset in the estate was the family home, a source of potential emotional and financial conflict in these circumstances. His children from his earlier marriage were being given four-fifths interests in the property. The disputed provision ensured that everyone involved understood that the testator intended that his new wife have the right to remain in the family home. It was the apparent hope of the testator that the devisees would be able to agree upon the use and occupancy of the property; in the event that they could not, however, we are confident that the testator did not intend to provide the petitioner with the right to exclude his children from the home during her lifetime or to acquire a vastly unequal division of the proceeds from the sale of the property. See, e.g., *Tucci* v. *DiGregorio*, 358 Mass. at 497 ("[i]f the tenants in common are unable to agree upon occupancy of the common property in accordance with the apparent hopes of the testator, then the division of the real estate . . . or the sale of the real estate and the division of the proceeds therefrom can be accomplished more appropriately by proceedings for partition").

*Conclusion.* The will provided the petitioner and each of the testator's four children with a one-fifth present possessory interest in the property as tenants in common. The petitioner was not granted a life estate in the property. The judgment is therefore reversed and the matter is remanded to the Probate and Family Court for further proceedings and declaration of the parties' rights consistent with this opinion.

*So ordered.*